IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CORDANCE CORPORATION
       Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON
       Defendant.

Misc. No. _____

## PETITION TO COMPEL ARBITRATION

Cordance Corporation ("Cordance") brings this Petition to compel arbitration against the Underwriters at Lloyd's, London ("Lloyd's").

## THE PARTIES

1.      Plaintiff Cordance is a Washington Corporation with its principal place of business at 3020 Issaquah-Pinelake Road #74, Sammamish, WA 98075.

2.      On information and belief, Defendant Lloyd's is an association of insurance underwriters with its principal place of business at One Lime Street, London, EC3M 7HA, United Kingdom.

## JURISDICTION AND VENUE

3.      This is a petition to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and the Massachusetts Uniform Arbitration Act, Mass. Gen. L. Ch. 251 § 2 et seq. There is diversity of citizenship between the parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

4.      This Court has personal jurisdiction over Defendant. Defendant does business in Massachusetts, and has contractually agreed to submit to the jurisdiction of courts in the United States.

**THE AGREEMENT TO ARBITRATE**

5.      On October 6, 2000, Cordance and Lloyd's entered into an insurance agreement ("the Agreement") providing for binding arbitration of disputed claims of coverage.  The Agreement is attached as Exhibit 1.

6.      The relevant portion of the Agreement reads as follows: "Any dispute between the INSURED and Underwriters arising out of Authorization under this Certificate as it relates to the opinion of independent patent counsel shall be promptly referred to arbitration for final determination."

7.      The Agreement also provides: "For the purposes, and only for the purposes, of effectuating the foregoing arbitration provision, including, without limitation, the enforcement of any award entered at such an arbitration.  Underwriters agree as follows: It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due under this insurance, Underwriters hereon, at the request of the NAMED INSURED, will submit to the jurisdiction of a court of competent jurisdiction within the United States."

**LLOYD'S REFUSAL TO AUTHORIZE LITIGATION UNDER THE AGREEMENT**

8.      The Agreement provides licensing failure indemnity coverage.  Under the Agreement, Lloyd's is obligated to authorize and cover the costs of a patent infringement lawsuit for an amount up to $5,000,000 on the condition that an independent patent counsel review the patent claims and accused product and issue an opinion that the insured patent has been infringed and is not subject to valid assertions of invalidity, unenforceability or inequitable conduct, and that there are no issues present which would present a material impediment to successful prosecution of the litigation.

9.      On August 7, 2003, Cordance submitted a notice of its claim under the Agreement to Lloyd's.

10.     On October 12, 2004, an independent patent counsel completed its review of the insured patent and accused product and sent an opinion to Lloyd's.  That opinion concluded: "Given all of the issues discussed above, however, we believe that the Insured's claim has merit, and the Insured **should be authorized under the Policy to proceed with litigation** against the Potential Infringer."  (Emphasis added.)

11.     On November 17, 2004, Lloyd's informed Cordance that it refused to authorize litigation on the insured patent, claiming that the independent patent counsel's opinion did not meet all of the requirements of the Agreement.

12.     On January 11, 2005, the independent patent counsel wrote a letter to Lloyd's, reiterating its conclusion that the litigation should be authorized.  The independent patent counsel stated: "Based on the facts and material that we reviewed, **we maintain that [Cordance's] claim has merit and that should be authorized under the Policy to proceed**.  We thus understand that **our letter does, in fact, meet the requirements of a letter that requires authorization of the litigation**." (Emphasis added)

13.     Despite the independent patent counsel's unequivocal conclusion that Lloyd's must authorize the claimed litigation, Lloyd's continued to refuse to authorize Cordance's claims.

## LLOYD'S LACK OF RESPONSE TO CORDANCE'S ARBITRATION PROPOSALS

14.     On February 11, 2005, Cordance wrote to Lloyd's, requesting a response to the independent patent counsel's January 11, 2005 letter, and stating that it would invoke the arbitration clause in the Agreement if Lloyd's did not respond by February 25, 2005.

15.     Between March 2005 and December 2005, the parties engaged in negotiations regarding the details of the requested arbitration proceeding.

16.     On December 1, 2005, Cordance sent Lloyd's a comprehensive letter setting out its position on the arbitration proceeding.  That letter is attached as Exhibit 2.

17.     At the time this Complaint is being filed, Lloyd's has not provided a written response to Cordance's December 1, 2005 proposal, despite the passage of three months.

18.     Throughout December, January, and February, Cordance repeatedly contacted and attempted to contact Lloyd's to request a written response to its December 1, 2005 letter. Lloyd's repeatedly failed to return calls or provide promised responses.  On several occasions when counsel for Cordance was able to reach counsel for Lloyd's, the latter would promise to get back to Cordance shortly and then failed to do so at all.  Although acknowledging repeatedly their obligation to arbitrate, Lloyd's simply ignored both Cordance's proposed deadlines for doing so and their own agreed-upon deadlines for doing so.

19.     On February 16, 2006, Cordance sent Lloyd's a final letter outlining in detail the history of these attempts to obtain a good-faith response and good-faith participation in the arbitration procedure.  Cordance concluded by noting that Lloyd's was leaving Cordance with no choice but institute appropriate action to compel Lloyd's to attend the required arbitration if Lloyd's would not respond by February 24, 2006 with a commitment to cooperate in good faith with the arbitration process.  This letter is attached as Exhibit 3.

20.     Lloyd's has not responded to or otherwise acknowledged Cordance's February 16, 2006 letter.

## APPLICABLE LAW

21.     The Federal Arbitration Act ("FAA") provides that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof…shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

22.     The purpose of the FAA is to ensure the "rapid and unobstructed enforcement of agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983). There is thus a strong public policy favoring that favors the arbitration of disputes by requiring courts to enforce arbitration agreements.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 613 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). Accordingly, the Court must order arbitration where an applicable arbitration provision exists. Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985).

## RELIEF REQUESTED

WHEREFORE, Plaintiff Requests that this Court:

23.     Order Defendant to cooperate in good faith with the arbitration process and attend the arbitration, as required by the Agreement.

24.     Award Plaintiff such further relief as this Court may deem just and necessary.

25.     Award Plaintiff its fees and costs in preparing this Petition.

Respectfully submitted,


CORDANCE CORPORATION,

By its attorneys,

Dated: March 2, 2006

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX